UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA CENTER FOR THE ARTS, ESCONDIDO, FOUNDATION, an unknown business entity d/b/a California Center for the Arts, Escondido,<br><br>Defendant. | Case No.: 20cv2137-LL-NLS<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 34] |

This matter is before the Court on Defendant's Motion for Summary Judgment. ECF No. 34. The Motion has been fully briefed, and the Court deems it suitable for submission without oral argument. The Motion is **DENIED**.[1]

---

[1] The Court declines to address the parties' individual evidentiary objections, most of which are directed at the lack of foundation. These objections need not be addressed here, as most of the evidence could be presented in admissible form at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). Therefore, the evidentiary objections [ECF Nos. 36-1 and 37-1] are **DENIED WITHOUT PREJUDICE**.

## I. Background

Plaintiff G & G Closed Circuit Events, LLC ("G&G" or "Plaintiff") alleges that it is a closed circuit distributor of sports and entertainment programming that purchased and retained the exclusive commercial exhibition (closed circuit) licensing rights to *Saul "Canelo" Alvarez v. Sergey Kovalev Championship Fight Program* (the "Program"), which occurred on Saturday, November 2, 2019. ECF No. 1 ¶ 16. Plaintiff further alleges that Defendant California Center for the Arts, Escondido ("CCAE" or "Defendant") violated Plaintiff's rights by unlawfully accessing the Program and showing it at its annual *Dia de Los Muertos* festival (the "Festival"). *Id.* ¶ 21.

Based on these allegations, G&G filed this suit against CCAE for: (1) violation of 47 U.S.C. § 605 ("Section 605"); (2) violation of 47 U.S.C. § 553 ("Section 553"); (3) conversion; and (4) violation of California's Unfair Competition Law ("UCL"), Business and Professions Code section 17200. ECF No. 1. Defendant now brings this Motion for Summary Judgment.

## II. Legal Standard

The familiar summary judgment standard applies here. Under Federal Rule of Civil Procedure 56, the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, disputes must be both (1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and (2) genuine, meaning the evidence must be such that a reasonable judge or jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Anderson*, 477 U.S. at 248). When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Disputes over irrelevant

or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### III. Discussion

Here, it is undisputed that the Program was shown at or near the CCAE premises, during or shortly after the Festival, by a CCAE vendor named Jose Salas, aka SugerbearSD. CCAE had contracted with Mr. Salas to put on a low-rider exhibit and play music at the Festival, but claims it had no knowledge that Mr. Salas would be showing the Program shortly after the purported end of the Festival on November 2, 2019. The question is whether CCAE can be held liable for that unauthorized broadcast, and whether there are any disputed facts as to that issue.

Defendant argues: (1) Plaintiff's claim for violation of Section 605 fails because there is no evidence that CCAE ever intercepted or received the radio or satellite signal for the program; (2) Plaintiff's claim for violation of Section 553 fails because there is no evidence that CCAE ever intercepted or received the cable signal for the program; (3) Plaintiff's claim for conversion fails because intangible property cannot be converted and Plaintiff has no evidence that CCAE misappropriated Plaintiff's property; (4) Plaintiff's claim for unfair business practices under the UCL fails because CCAE did not compete unfairly; (5) Plaintiff lacks standing to assert any of the claims; and (6) Plaintiff has no claim for enhanced statutory damages.

#### A.  Direct liability under 47 U.S.C. §§ 605 and 553

There are two federal statutes that generally govern television signal piracy, 42 U.S.C. §§ 605 and 553 (hereinafter the "television signal piracy statutes").

Section 605 concerns radio and satellite communications and states in pertinent part:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various

> communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. . . .

47 U.S.C. § 605.

> Section 553 concerns communications over a cable system and states in part:
>
> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1).

Defendant argues there is no evidence it ever "intercepted" the signal for the Program and, therefore, it cannot be held liable under the television signal piracy statutes. ECF No. 34-1 at 15. Defendant provides evidence that it does not have a satellite account or dish, nor a cable television account. *Id.* However, regardless of whether CCAE had the technical capability to "intercept" the Program, Section 605 also prohibits the unauthorized receipt of television signals. *See DirecTV, Inc. v. Webb*, 545 F.3d 837, 848 (9th Cir. 2008). To establish liability under this section, a plaintiff must establish that the defendant "unlawfully intercepted, received, published, or divulged Plaintiff's privileged communication." *J&& Sports Prods. Inc. v. Rubio*, No. CV-16-1111-PHx-JST, 2017 WL 3234939, at *2-3 (D. Ariz. 2017) (citing 47 U.S.C. § 605); s*ee also That's Entertainment, Inc. v. J.P.T., Inc.*, 843 F. Supp. 995, 999 (D. Md. 1993) (even if inn and its manager did not "intercept" satellite cable broadcast of boxing match, inn and manager violated Federal Communications Act by broadcasting event to patrons of commercial establishment without authorization). Similarly, Section 553 also does not require technical capability to "intercept," as it also prohibits "assisting in intercepting or receiving any communication services offered over a cable system." 42 U.S.C. § 553(a)(1). Thus, even if CCAE did not own a satellite or cable account, liability is not precluded under the television piracy statutes.

Plaintiff acknowledges that it cannot recover damages under both Sections 605 and 553, and the complaint alleges violations in the alternative. ECF No. 36 at 19. There is insufficient evidence at this time to conclusively determine which form of transmission is at issue, although Plaintiff asserts that it appears to be an internet streaming violation. *Id.* Defendant argues that if a signal is received via the internet, it falls outside of the coverage of the television signal piracy statutes. ECF No. 34-1 at 28. While there is no Ninth Circuit precedent on that issue, district courts in the Ninth Circuit have held that internet signals are covered by the television signal piracy statutes, and this Court agrees with their analyses. *See G&G Closed Circuit Events LLC v. Montoya*, No. CV-20-00834-PHX-SPL, 2021 WL 3190726, at *2–3 (D. Ariz. July 28, 2021); *G&G Closed Circuit Events, LLC v. Gonzalez Ruiz,* 379 F. Supp. 3d 1061, 1066 (S.D. Cal. 2019); *J&J Sports Prods, Inc. v. Jaschkowitz*, No. 5:14-cv-440-REW, 2016 WL 2727015, at *1, 4 (E.D. Ky. May 6, 2016). Therefore, liability is not precluded if the signal was received via the internet.

### B.  Vicarious and Contributory Liability under Sections 605 and 553

Regardless of whether Defendant is held directly liable for a Section 605 or 553 violation, it can be held vicariously or contributorily liable for a violation by one of its vendors if it had sufficient knowledge, control, or financial interest in the offense. *Flores v. J&J Sports Prods, Inc.*, 913 F. Supp. 2d 950, 959 (E.D. Cal. 2012). Specifically, for Defendant to be held vicariously liable, it "must have had the right and ability to police the conduct of its vendors and have acquired a direct financial interest in the interception and exhibition." *Id*. For Defendant to be held contributorily liable, Defendant "must have either knowingly authorized the vendors' interception and exhibition or provided an environment and market for the interception and exhibition with knowledge such activity was or would be occurring." *Id.*

Defendant argues that because the Program was shown by a vendor after 8 p.m. in a location outside the CCAE office, it cannot be held vicariously or contributorily liable. Specifically, Defendant argues that because the Program was shown after 8 p.m. (Mr. Salas' contract had a time of engagement of 3 to 8 p.m.), the Program was not shown

"during" the Festival. However, Plaintiff has presented evidence that nineteen CCAE employees were paid to work at the Festival after 8 p.m. ECF No. 36-4 at 51–53. In addition, Elite personnel (with whom CCAE contracted to provide security services at the Festival) were present during the broadcast of the Program. ECF No. 36-2 at 3. Finally, the Festival was a four-day event, and the Program was broadcast the night of the second day of the Festival. ECF No. 36-4 at 59. Therefore, there are triable issues of fact as to whether the Program was shown "during" the Festival.

Defendant also argues that the Program was not shown "inside" the CCAE and, therefore, did not occur in a location Defendant could control. While it is clear the Program was not shown inside a CCAE building, Plaintiff has provided evidence that it did occur on CCAE grounds, or in an area over which CCAE exercised control. For example, Plaintiff's investigator (who observed the broadcast of the Program on the night in question) states that the television and chairs were set up in the courtyard directly in front of the CCAE office. ECF No. 36-2 at 3. He also observed two Elite personnel standing at the entrance to the courtyard. Thus, there is disputed evidence as to whether the Program was shown within CCAE property or in a location it could control.

Defendant also argues it had no control over Mr. Salas, who was an independent contractor. While some of the language in the contract between CCAE and Mr. Salas may have given Mr. Salas the right to control the means by which he performed, there is other contractual language that suggests Defendant had the right to control some aspects of Mr. Salas' work, such as where he performed, when he performed, and his ability to serve alcohol. ECF No. 34-20. In addition, as set forth above, there is disputed evidence that Mr. Salas showed the Program in an area CCAE controlled and during a time when CCAE employees were still present. Thus, there are disputed issues as to whether Defendant had the ability to control the actions of its vendor.

Defendant also argues it had no prior knowledge that Mr. Salas would be showing the Program. However, as discussed above, there is evidence that CCAE and Elite personnel were present during the broadcast of the Program, which occurred at or near the

place where Mr. Salas performed his contractual services, and occurred at or near the time of the Festival. There is also evidence that CCAE employees may have had prior notice (from social media) that Mr. Salas would broadcast the Program. ECF No. 36-4 at 61–63. Thus, there are disputed issues as to whether Defendant knew Mr. Salas would broadcast the Program.

Finally, Defendant argues that it did not receive any income from the showing of the Program and therefore had no direct financial interest in the interception and exhibition of the Program. While the Program was shown free of charge by Mr. Salas after 8 p.m., it was shown at or near the time and place of the Festival and was advertised on social media prior to the Festival, which may have attracted more people to the Festival. Thus, there are disputed issues as to whether Defendant had a financial interest in the exhibition of the Program.

Accordingly, given the numerous disputed issues as to whether Defendant may be held directly, vicariously, or contributorily liable for the broadcast of the Program, summary judgment on the Sections 605 and 553 claims must be denied.

### C. Conversion

Defendant argues that Plaintiff's "signal" is an intangible property interest that cannot be converted. ECF No. 34-1 at 26. Traditionally, a claim for conversion lay only where the property alleged to be converted is tangible, but "courts in recent years have significantly relaxed this rule." *Don King Prods./Kingvision v. Lovato*, 911 F. Supp. 419, 423 (N.D. Cal. 1995); *DirecTV, Inc. v. Pahnke,* 405 F. Supp. 2d 1182, 1189–90 (E.D. Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law and granting plaintiff's motion for summary judgment for conversion). Thus, the Program is a property interest that can be the subject of a conversion claim.

Defendant next argues that even if the Program can be the subject of a conversion claim, Plaintiff has no evidence to support the elements of the claim. ECF No. 34-1 at 27. Under California law, conversion requires a showing of: (1) ownership of a right to

possession of property; (2) wrongful disposition of the property right of another; and (3) damages. *See G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir. 1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant." *Gilman v. Dalby*, 176 Cal. App. 4th 606, 615 n.1 (2009).

First, Defendant argues that Plaintiff has no standing or "right to possession of property" because its rights under the contract had reverted to a third party on December 31, 2019. ECF No. 34-1 at 27. However, Plaintiff has submitted evidence that an amendment to the original contract with the third party preserved Plaintiff's rights. ECF No. 36 at 30. Therefore, there are triable issues of fact as to Plaintiff's standing. Second, Defendant argues that there is no evidence that Defendant "disposed" of the property, "exercised dominion or control over the signal," or "intercepted or received or published or divulged the Program." ECF No. 34-1 at 27. However, as discussed above, there are numerous triable issues as to whether Defendant "received, published, or divulged" the Program to the Festival participants. Thus, summary judgment as to the conversion claim must be denied.

### D.     Unfair Competition

California's Business and Professions Code section 17200 defines "unfair competition" to include any "unlawful, unfair, or fraudulent business practice." This language is intended to protect consumers as well as business competitors; its prohibitory reach is not limited to deceptive or fraudulent conduct but extends to any unlawful business conduct. *Perdue v. Crocker National Bank*, 38 Cal.3d 913, 929 (1985) (citations omitted). Defendant argues that its actions were not "unfair" under the UCL. However, if Defendant is found liable for violation of Section 605 or 553, this could constitute "unfair" practices. *Flores*, 913 F. Supp. 2d at 963 (Section 605 and 553 claims can serve as a predicate for a section 17200 action). For the reasons discussed above, there are triable issues as to

/ / /

/ / /

whether Defendant violated Sections 605 and 553. Therefore, summary judgment as to the UCL claim must be denied.[2]

### E.  Enhanced Statutory Damages

Defendant also seeks summary adjudication as to Plaintiff's request for enhanced statutory damages under Sections 605 and 553 because there is no evidence that it committed a "willful" violation of the statutes. ECF No. 34-1 at 30. Given that the Court is denying summary judgment as to the claims for violations of Sections 605 and 553, it declines to address the issue of enhanced statutory damages at this time.

### IV.  Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED**. However, this Order should not be read as an indication by the Court that Plaintiff will prevail at trial.

**IT IS SO ORDERED.**

Dated:  February 28, 2022

_____
Honorable Linda Lopez
United States District Judge

---

[2] Plaintiff presumably will not seek recovery under the UCL attorneys' fees provision as it does not challenge summary judgment on that issue. ECF No. 36 at 29.